Citation Nr: 1719254 
Decision Date: 05/05/17 Archive Date: 06/06/17

DOCKET NO. 12-09 712 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

L. McCabe, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1965 to April 1969, with additional reserve service

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an April 2011 decision of the Portland, Oregon, Regional Office (RO) of the Department of Veterans Affairs (VA).

In September 2014, the Veteran testified before the undersigned Veterans Law Judge at a hearing at the RO (Travel Board hearing). A transcript of the hearing is of record.

The case was previously before the Board in November 2014, at which time the claims were remanded for additional development. That development having been completed, the case has returned to the Board. 


FINDINGS OF FACT

The evidence is in relative equipoise as to whether the Veteran's current bilateral hearing loss and tinnitus are related to in-service acoustic trauma.


CONCLUSION OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for bilateral hearing loss have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385, 4.85 (2016). 

2. Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for tinnitus have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Procedural Duties

The Veterans Claims Assistance Act of 2000 ("VCAA") sets forth VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2016).

Because the Board is granting the claims for service connection for bilateral hearing loss and tinnitus, any procedural deficiency is not prejudicial to the Veteran.


II. Analysis

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110. Establishing service connection generally requires competent medical or lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

In addition, certain chronic diseases, including sensorineural hearing loss and tinnitus (as organic diseases of the nervous system), may be presumed to have been incurred or aggravated during service if they become disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

The Veteran maintains that he has a current bilateral hearing loss disability and that he suffers from tinnitus, both of which are the direct result of noise exposure during active service. The Veteran specifically asserts that he developed hearing loss and tinnitus during active service as a result of in-service exposure to traumatic noise during the performance of duties working as a radio man on a fleet tug (ATF) vessel, and that those disabilities have continued to worsen since service. See, e.g., September 2014 Board Hearing Testimony. 

In this case, the Veteran has been diagnosed with both bilateral sensorineural hearing loss and bilateral tinnitus on VA Examination. See March 2011 VA Examination Report; May 2013 VA Examination Report. Additionally, the audiograms preformed in conjunction with these VA examination reports confirm that the Veteran has a current bilateral hearing loss disability for VA purposes, as the Veteran had bilateral puretone threshold levels greater than 40 decibels at each of the relevant thresholds. See 38 C.F.R. § 3.385 (2016) (For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent.); Hensley v. Brown, 5 Vet. App. 155, 157 (1993). 

Moreover, at the September 2014 Board hearing, the Veteran has reported exposure to acoustic trauma during active service, including during the performance of duties working as a radio man on a fleet tug vessel during his active naval service. See September 2014 Board Hearing Transcript. He additionally reported the onset of acoustic pathology, including in the form of tinnitus, during his active service. See id. The Veteran's DD214 reflects that his Military Occupational Specialty (MOS) was as a radio operator. Moreover, he is competent under the law to describe what he experienced while in military service. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005) (holding that a Veteran is competent to report what occurred during service because he is competent to testify as to factual matters of which he has first-hand knowledge); Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007) (holding that lay testimony is competent to establish the presence of observable symptomatology); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Accordingly, the Board finds the Veteran's account of experiencing in-service acoustic trauma and auditory symptomatology to be credible and consistent with the circumstances of his service. See 38 U.S.C.A. § 1154(a) (West 2014); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

Additionally, the Board finds the Veteran to be credible in his report of having auditory symptomatology since service. See Caluza v. Brown, 7 Vet. App. at 711, aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table) (holding that, in determining whether statements submitted by or on behalf of a claimant are credible, the Board may consider their internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant); Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001). In this regard, the Veteran's account is bolstered by his service treatment records (STRs), which, as discussed in the prior November 2014 Board remand, evidence significant acoustic threshold shifts at several relevant frequencies during and shortly following his period of active duty service. See May 1965 Entrance Audiogram; March 1969 Separation Audiogram; and May 1972 Reserves Audiogram (reflecting an in-service audiometric threshold shift of 10 decibels at 2000 Hz. in the right ear from entrance to separation, as well as a shift of 10 decibels at 1000 Hz. and 4000 Hz. on the right and at 500 Hz. on the left between May 1965 and May 1972). See also 29 C.F.R. § 1910.95(g)(10)(i) (reflecting that the Occupational Safety & Health Administration (OSHA) defines a "standard threshold shift" as "a change in hearing threshold relative to the baseline audiogram of an average of 10 dB or more at 2000, 3000, and 4000 Hz in either ear"). 

The Board acknowledges the negative etiological opinion evidence of record in the form of the May 2015 VA examination report and March 2016 addendum; however, the Board declines to accept these opinions, as the VA examiner failed to adequately address the Veteran's lay assertions of onset and continuity of symptomatology, despite the Board's explicit instruction to do so. See November 2014 Board Remand; see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (holding that most of the probative value of an opinion comes from its rationale or underlying reasoning). Additionally, while the VA examiner opined that the Veteran's bilateral hearing loss disability and tinnitus were not due to military noise exposure, the examination repots based the negative opinion primarily upon the absence of documented hearing loss upon separation. See Hensley, 5 Vet. App. at 159 (holding that 38 C.F.R. § 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service); Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992) (finding that the lack of documented hearing loss while in service is not fatal to a claim for service connection.). Additionally, the VA examiner determined that the in-service threshold shifts discussed above did not meet the definition of "standard" threshold shifts because the Veteran did not have "an average [shift] of 10 dB or more at 2000, 3000, and 4000 Hz in either ear" during his active service. See March 2016 VA Addendum Opinion. See also 29 C.F.R. § 1910.95(g)(10)(i). Significantly, however, audiometric testing was not performed at 3000 Hz on entrance examination in May 1965, and no testing was conducted on separation at 3000 or 4000 Hz. See May 1965 Entrance Audiogram; March 1969 Separation Audiogram. Accordingly, the VA examiner's ultimate conclusion that the "[V]eteran's service records did not show a standard threshold shift" is based entirely upon incomplete and inaccurate information. See Reonal v. Brown, 5 Vet. App. 458 (1993) (holding that a physician's opinion based on an inaccurate factual premise has no probative value). And the examiner failed address or explain the change in thresholds, despite the Board's instruction. See March 2016 VA Addendum Opinion (noting that the Board "incorrectly recorded the hearing threshold at 3000Hz in the left ear in May of 1972 as 15dB"); but see May 1972 Naval Reserves Report of Medical Examination for Reenlistment in the U.S. Navy Reserves (clearly reflecting a left ear hearing threshold of 15dB at 3000 Hz). Therefore, the May 2015 VA examination report and March 2016 addendum opinion form an inadequate foundation upon which to base a denial of entitlement to service connection. 

In sum, the Veteran has a current ratable bilateral hearing loss disability as defined by 38 C.F.R. § 3.385. Moreover, there is competent and credible lay evidence of record that bilateral hearing loss and tinnitus occurred following acoustic trauma during active service and have continued to progress since that time. See Charles v. Principi, 16 Vet. App. 370 (2002); Jandreau, 492 F.3d at 1376-77 (Fed. Cir. 2007); Buchanan, 451 F .3d at 1337 (Fed. Cir. 2006). See also Jefferson, 271 F.3d 1072. This credible report of a continuity of symptomatology suggests a link between his current bilateral hearing loss and tinnitus and his active service. See Duenas v. Principi, 18 Vet. App. 512 (2004). Accordingly, in the absence of any probative evidence to the contrary, the Board finds that the evidence for and against the claims is at least in equipoise. 

When the evidence for and against the claim is in relative equipoise, by law, the Board must resolve all reasonable doubt in favor of the Veteran. See 38 U.S.C.A. §§ 1154(b); 5107 (West 2002); 38 C.F.R. § 3.102 (2016); see also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). Therefore, the benefit of the doubt must be resolved in favor of the Veteran and entitlement to service connection for bilateral hearing loss disability and tinnitus is warranted.


ORDER

Service connection for bilateral hearing loss is granted.

 Service connection for tinnitus is granted.



____________________________________________
P.M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs